David C. Parisi, Esq. (162248)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com

Attorneys for plaintiff Merdad Valikhani,
on behalf of himself, the general public
and all others similarly situated

# UNITED STATES DISCRICT COURT

# SOUTHER DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERDAD VALIKHANI, an individual, on behalf of himself, the general public and all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED, a Delaware Corporation, and DOES 1-100, inclusive,<br><br>   Defendants, | CASE NO. 08 cv 0786 WQH (JMA)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO REMAND**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>**Date:** June 23, 2008<br>**Time:** 11:00 a.m.<br>**Judge:** Hon. William Q. Hayes |

# TABLE OF CONTENTS

I. INTRODUCTION 1

II. SUMMARY OF FACTS 1

III. APPLICABLE STATUTORY LAW 2

IV. ARGUMENT 2

A. Removal Statutes Such as 28 U.S.C. § 1332(d)(2) are Strictly Construed 2

B. Qualcomm Failed to Meet its Burden of Showing by a Preponderance of the Evidence that the Amount in Controversy Exceeds $5,000,000 3

1. The burden is on Qualcomm 3

2. Qualcomm did not meet its burden 4

V. CONCLUSION 7

PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299

# TABLE OF AUTHORITIES

## Cases

*Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006) ..........................3

*Blockbuster, Inc. v. Galeno*, 472 F.3d 53 (2d Cir. 2006) ......................................................3

*Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005) ..............................6

*DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271 (2nd Cir. 2006) .........................6

*Duncan v. Stuetzle*, 76 F.3d 1480 (9th Cir. 2006) ...............................................................3

*Evans v. Walter Indus. Inc.*, 449 F.3d 1159 (11th Cir. 2006) ..............................................3

*Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992) ...............................................................3

*Havel v. SunAmerica Securities, Inc.*, 2006 WL 2917591 (N.D. Cal. Oct. 11, 2006) ........3

*Hofler v. Aetna U.S. Healthcare*, 296 F.3d 764 (9th Cir. 2002) ..........................................3

*Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089 (9th Cir. 2003) ......................3

*McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178 (U.S. 1936) ....5, 6

*Morgan v. Gay*, 471 F.3d 469 (3d. Cir. 2006) .....................................................................3

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) ................................................3

*Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373 (9th Cir. 1997) .............................3

*Valdez v. Allstate Inc.*, 373 F.3d 1115 (9th Cir. 2004) ........................................................3

PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299

## I. INTRODUCTION

In its removal papers, Defendant Qualcomm Incorporated ("Qualcomm") claims that the amount in controversy this action exceeds $5,000,000. However, Qualcomm's claim is purely speculative and simply based on information and belief. Qualcomm asserts that the class must exceed $5 million because there are 326 million UMTS devices, but it ignores the fact that this is a global figure. Qualcomm also bases its removal on 76 million GSM subscribers, but provides no information about the number of subscribers using the UMTS standard at issue. Finally, Qualcomm provides no evidence or estimate of the cost to consumers of the alleged anticompetitive conduct. Therefore, Qualcomm has failed to meet its burden of proof, and removal was improper.

## II. SUMMARY OF FACTS

Plaintiff alleges a national class against Qualcomm. Complaint, ¶1. Plaintiff alleges that Qualcomm engaged in "illegal and anticompetitive conduct in markets for the technology and chipsets that operate call phones employing Wideband Code Division Multiple Access ("WCDMA"), which is a third generation technology that is implemented through the Universal Mobile Telecommunications System ("UMTS") standard. Complaint, ¶2. Plaintiff alleges that Qualcomm intentionally deceived private standards-determining organizations, thereby monopolizing certain markets for cellular telephone technology. *Id*. Qualcomm holds patents that are necessary to "WCDMA technology and the UMTS standard." Complaint, ¶3. Private standards-determining organizations only adopted UMTS "after Qualcomm represented in writing that it would license its patents on fair, reasonable and non-discriminatory terms." *Id*.

"After the UMTS standard was adopted, Qualcomm disregarded" its agreement to fairly license patents. Complaint, ¶4. Qualcomm then "coerced device manufacturers and

service carriers . . . into paying supracompetitive prices to license Qualcomm's WCDMA technology." Complaint, ¶5.

Plaintiff Merdad Valikhani purchased a UMTS device. Complaint, ¶71. Qualcomm's anticompetitive conduct imposes "enormous costs on UMTS device manufacturers" which are passed on to consumers like Plaintiff. Complaint, ¶6. (Plaintiff does not allege whether a penny, dollar or other figure was passed on to consumers and Qualcomm ignores this issue in its Notice of Removal.) Plaintiff alleges that Qualcomm's practices violate California's Cartwright Act and Unfair Competition Law. Complaint, ¶7. Plaintiff alleges that "end consumers [like Plaintiff] . . . pay more for UMTS devices than they would in the absence of anticompetitve effects of Qualcomm's UMTS Licensing." Complaint, ¶74. Plaintiff identifies two classes, one composed of purchasers of UMTS-capable cellular devices (Complaint, ¶89) and one composed of purchasers of cellular service from a carrier which bundles its services with a UMTS-compliant device (Complaint, ¶93).

## III. APPLICABLE STATUTORY LAW

The Class Action Fairness Act ("CAFA") provides that, putting aside certain exceptions that are not applicable, "the district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," there are at least 100 members of the putative class, and at least one member of the putative class is a citizen of a state different from the defendant. 28 U.S.C. § 1332(d)(1) and (2).

## IV. ARGUMENT

### A. Removal Statutes Such as 28 U.S.C. § 1332(d)(2) are Strictly Construed

The removal statutes are construed restrictively in this Circuit and there is a strong presumption against removal:

> The removal statutes are construed restrictively, so as to limit removal jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Hofler v. Aetna U.S. Healthcare*, 296 F.3d 764, 767 (9th Cir. 2002). There is a "strong presumption" against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Doubts as to removability are resolved in favor of remanding the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

*Havel v. SunAmerica Securities, Inc.*, 2006 WL 2917591, *1 (N.D. Cal. Oct. 11, 2006).

### B. Qualcomm Failed to Meet its Burden of Showing by a Preponderance of the Evidence that the Amount in Controversy Exceeds $5,000,000

#### 1. The burden is on Qualcomm

It is well established that "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *See Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (per curiam); *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006); *Morgan v. Gay*, 471 F.3d 469, 473 (3d. Cir. 2006); *Evans v. Walter Indus. Inc.*, 449 F.3d 1159, 1165 (11th Cir. 2006). In fact, the removal statute is to be strictly construed against removal and a court must reject federal jurisdiction if there is any doubt at to whether removal was proper. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 2006).

Where a complainant does not specify damages sought, a defendant must "prove by a preponderance of the evidence that the amount in controversy requirement has been met" in order to meet this burden. *Abrego*, 443 F.3d at 683 (citations omitted). "Conclusory allegations as to the amount in controversy are insufficient." *Matheson*, 319 F.3d 1089, 1090-91 (footnote omitted). In fact, establishing the amount in controversy requires more than a "mere averment" of the amount at stake. *Gaus*, 980 F.2d at 567. The defendants must put forth "summary-judgment-type evidence relevant to the amount in controversy at time of removal." *Valdez v. Allstate Inc.*, 373 F.3d 1115, 1117 (9th Cir. 2004); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (where damages not

PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299

3
Motion to Remand

quantified in complaint or "facially apparent," courts look beyond complaint to "consider facts in the removal petition").

### 2. Qualcomm did not meet its burden

Qualcomm failed to meet its burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. Qualcomm alleges in its Notice of Removal, "[b]ased on information and belief, [that] the matter in controversy exceeds $5 million." Notice of Removal, Docket Item No. 1, ¶9. Qualcomm bases this belief on the allegations in the complaint that (1) there were 326 million UMTS devices sold over the last three years and (2) there were approximately 76 million GSM subscribers. *Id*.

The problem with Qualcomm's belief is threefold. First, the 326 million UMTS devices were sold *globally* over the last three years, not nationally, and this is a national class action. Complaint, ¶90. Plaintiff does not allege or know the number of UMTS devices sold in the United States. Qualcomm provides no evidence to meet its burden that all, part, or even a few of these devices were sold in the United States. Second, while Plaintiff alleges the existence of 76 million GSM subscribers in the United States, not all of these subscribers use the UMTS standard. Finally, Qualcomm provides no evidence that its alleged anticompetitive conduct is passed through to end consumers like plaintiff, or the cost to end consumers of the anticompetitive conduct.

Qualcomm's Notice of Removal, without any discussion or evidentiary support with regard to the value of the potential class' claims and the money at issue, is insufficient to support a finding that the amount in controversy exceeds the applicable threshold. Indeed, Qualcomm offers no evidence whatsoever of the monetary value of the alleged "supracompetive prices." Rather, Qualcomm merely declares that it must be more than $5 million based upon the "sheer number of individuals" involved. Notice of Removal ¶9:18. With such a simple conclusory statement, Qualcomm fails to establish that more than $5,000,000 is in controversy in this case.

The Court's opinion in *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 179-81, 56 S. Ct. 780, 780-82 (U.S. 1936) is instructive. The Court considered whether General Motors had established federal jurisdiction by stating that the net worth of its business in Indiana exceeded $50,000, where the threshold for establishing jurisdiction in federal court was $3,000 at the time. The underlying claim in that action, brought by General Motors, was that an Indiana law deprived General Motors "of its property without due process of law and denying it the equal protection of the laws in violation of the Fourteenth Amendment of the Federal Constitution." *Id.*, 298 U.S. at 179-80, 56 S.Ct. at 780-781. The Court held that General Motors had not met its burden:

> The value or net worth of the business which respondent transacts in Indiana is not involved save to the extent that it may be affected by the incidence of the statutory regulation. The object or right to be protected against unconstitutional interference is the right to be free of that regulation. The value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed. The particular allegations of respondent's bill as to the extent or value of its business throw no light upon that subject. They fail to set forth any facts showing what, if any, curtailment of business and consequent loss the enforcement of the statute would involve.

*Id.*, 298 U.S. at 181, 56 S. Ct. at 781. Thus, the Court held that because the amount at issue was not the net worth of General Motors' business in Indiana, but rather the difference between General Motors' business without the application of the Indiana law and with that law's application, General Motors had not met its burden by simply providing the net worth of its business in Indiana.

Similarly, in this case, Qualcomm does not establish that $5,000,000 is at stake simply by stating that 326 million UMTS devices were sold *globally*, or that there are 76 million GMS subscribers, not all of which use the UMTS standard. Qualcomm fails to provide a single fact establishing the number of UMTS devices sold in the United States, the percent or number of GSM devises use the UMTS standard, or the cost to end consumers of the anticompetitive conduct.

1     Based on the record, the $5 million figure is purely speculative. Qualcomm should
2  provide evidence that the amount in controversy exceeds the threshold with reference to
3  Plaintiff's claims. *See McNutt*, 298 U.S. at 179-81. *See also Brill v. Countrywide Home*
4  *Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) ("[P]art of the removing party's burden is to
5  show not only what the stakes of the litigation could be, but also what they *are* given the
6  plaintiff's actual demands").

7     A more recent case from the Second Circuit is also instructive. In an action for an
8  accounting to discover whether the defendant was deducting sham fees from a pool of state
9  funds, the court held the plaintiff "d[id] not place the *entirety* of the [p]ool 'in controversy,'
10 because he ma[de] no claim that he own[ed] it, and at most he suggest[ed] a claim to some
11 yet undefined portion, the amount of which [was] contingent on the outcome of the
12 accounting." *DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271, 272-73, 276-77 (2nd
13 Cir. 2006) (emphasis added). While *DiTolla* was an action for an accounting in which the
14 plaintiff made no claims for damages, the court there inferred that the plaintiff might benefit
15 from a settlement or restitution depending on the outcome of the accounting, and the court
16 nevertheless held that *the entirety of the pool was not in controversy*. Similarly, in this case,
17 Plaintiff does not claim that all of the UMTS devices sold globally cause U.S. consumers to
18 be overcharged, or that all of the GSM cellular units use the UMTS standard. As in *DiTolla,*
19 Plaintiff in this case suggests an accounting may be an appropriate method to determine the
20 amount of compensatory damages. Complaint, prayer, ¶d).

22    Qualcomm takes its unsupported argument one step further by pointing to the fact
23 that Plaintiff has requested treble damages and these amounts are included in determining
24 the amount in controversy. Notice of Removal ¶9, fn.1. Plaintiff does not dispute that
25 treble damages may be relevant in determining the amount in controversy. However, as
26 explained above, Qualcomm has not provided any basis for computing what these amounts
27 might be, much less any evidence that the treble damages, when calculated with an as-yet-
28 unidentified amount of compensatory damages, exceed $5,000,000.

1  In short, Qualcomm is asking the Court to assume that $5,000,000 is at issue in this
2  case simply because there are many UMTS devices in the world, and some unknown subset
3  of the 76 million GSM subscribers were on the UMTS standard. This assumption is purely
4  speculative and Qualcomm comes nowhere close to meeting its burden of proof. Removal
5  was, therefore, improper.

**V.  CONCLUSION**

For the reasons state above, Plaintiff's motion should be granted and this case should be remanded to the San Diego County Superior Court where it was properly filed.

DATED: May 16, 2008                    PARISI & HAVENS LLP


By:  s/David C. Parisi
Attorneys for plaintiff Merdad Valikhani, on behalf of himself, the general public and all others similarly situated

E-mail: dcparisi@parisihavens.com