UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>QUALCOMM, INC.,<br><br>    Defendant. | CIVIL ACTION NUMBER<br><br>05-3350 (MLC/JJH) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**

**Boies, Schiller & Flexner LLP**
150 JFK Parkway, 4th Floor
Short Hills, NJ 07078
(973) 218-1111

**Wilmer Cutler Pickering Hale and Dorr LLP**
60 State Street
Boston, MA 02109
(617) 526-6000

**Wilmer Cutler Pickering Hale and Dorr LLP**
1117 California Avenue
Palo Alto, CA 94304
(650) 858-6000

*Attorneys for Plaintiff Broadcom Corporation*

On the Brief:
William F. Lee
David S. Stone

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| III. | ARGUMENT | 5 |
| | A. Legal Standards | 5 |
| | B. This Court Should Transfer This Action to the Southern District of California Because of the Presence of Two Related Cases There | 6 |
| | C. Both the Private and Public Interests in This Case Support Transfer to the Southern District of California | 8 |
| |    1. Private Interests Will Best Be Served in the Southern District of California | 8 |
| |    2. Transferring the Action to California is Also in the Public Interest | 13 |
| IV. | CONCLUSION | 15 |

## TABLE OF AUTHORITIES

### CASES

Page(s)

*American Cyanamid Co. v. Eli Lilly & Co.*, 903 F. Supp. 781 (D.N.J. 1995) .............................. 6, 8

*American Telephone & Telegraph Co.*, 736 F. Supp. 1294 (D.N.J. 1990) ................................. 5, 8

*Aventis Pharmaceuticals. S.A. v. Sandoz, Inc.*, No. 06-3671, 2007 WL 1101228
    (D.N.J. Apr. 10, 2007) ........................................................................................................ 5

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) ................................................. 3

*Campus Dimensions, Inc. v. On-Campus Marketing Concepts, Inc.*, No. 94-649,
    1994 WL 470188 (E.D. Pa. Aug. 25, 1994) ...................................................................... 6

*Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509 (10th Cir. 1991) ......................... 5

*Continental Grain Corp. v. Barge FBL-585*, 364 U.S. 19 (1960) .................................................. 6

*Cuco v. United States*, No. 05-5347, 2007 WL 2904193 (D.N.J. Oct. 2, 2007) ............................ 9

*Ferens v. John Deere Co.*, 494 U.S. 516 (1990) ............................................................................ 5

*Gulf Oil Co. v. Gilbert,*, 330 U.S. 501 (1947) ................................................................................ 6

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ..................................................................... 5

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995) ........................................ 5, 6, 13

*LG Electronics v. First International Computer, Inc.*, 138 F. Supp. 2d 574 (D.N.J.
    2001) ............................................................................................................................. 6, 14

*Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442 (D.N.J. 1999) ..................................................... 5, 6

*Liebig v. Schneider National Bulk Carriers,* No. 9204773(AMW), 1993 U.S. Dist.
    LEXIS 1681 (D.N.J. Feb. 10, 1993) .................................................................................. 7

*Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518 (D.N.J.
    2000) ......................................................................................................................... 9, 13, 14

*Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473 (D.N.J. 1993) ............................................... 10-11

*Schwilm v. Holbrook*, 661 F.2d 12 (3d. Cir. 1981) ........................................................................ 5

*Security Savings Bank SLA v. Green Tree Acceptance, Inc.*, 703 F. Supp. 350
    (D.N.J. 1989) ........................................................................................................ 8, 9, 10, 12

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) .......................................................... 5

*Todd Shipyards Corp. v. Cunard Line Ltd.*, 708 F. Supp. 1440 (D.N.J. 1989) ................ 8

*Walsh v. Chez*, No. 05-286, 2006 WL 2583623 (E.D. Pa. Sept. 6, 2006) ........................ 6

*Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283 (E.D. Pa. 2001) ................................ 8

## STATUTES

28 U.S.C. § 1404(a) ......................................................................................................... 1, 5

I.  **INTRODUCTION**

Since the return of this case from the Third Circuit, a number of changes in circumstances have occurred that now make venue in the Southern District of California much more appropriate than in New Jersey, and Broadcom therefore requests that the case be transferred to California pursuant to 28 U.S.C. § 1404(a).

First, one of the principal factual links between Broadcom's claims and New Jersey has been severed with the dismissal of Broadcom's antitrust claim premised on Qualcomm's acquisition of New Jersey-based Flarion Technologies.

Second, two private antitrust class actions were filed last month against Qualcomm in the Southern District of California. Those cases present questions of law and fact nearly identical to Broadcom's Second Amended Complaint in this proceeding, as Qualcomm has acknowledged in motions filed earlier this month to have those two cases transferred to this Court. Moreover, both the California cases and this one remain in many ways at a preliminary stage.

Third, California state-law claims are the only remaining state law claims in Broadcom's Second Amended Complaint. Broadcom's First Amended Complaint, in contrast, stated claims for relief under numerous state antitrust or unfair competition statutes, including the laws of New Jersey.

Fourth, much of Qualcomm's deceptive behavior that gives rise to this suit occurred in or was directed from California. As reflected in allegations that appear for the first time in Broadcom's Second Amended Complaint, Broadcom has gained additional information over the past year and a half that Qualcomm's misconduct sprang from California.

Because Qualcomm, in motions to transfer the California cases to this Court, acknowledges that consolidation of those cases with this one in a single district is appropriate,

the only real issue is which district is more appropriate. At this juncture, the Southern District of California is the superior forum for the three cases.

Both Qualcomm and Broadcom are headquartered in southern California, the lead plaintiffs in the California cases reside there, and many witnesses reside in southern California. As Qualcomm acknowledges in its transfer motions, the Southern District of California "ordinarily would be a convenient venue" for it and "there is little doubt that relevant evidence and witnesses are located in [that] [d]istrict."[1] Transferring this action to the Southern District of California will promote judicial efficiency while conserving the resources that witnesses and parties must expend in litigating this dispute.

## II.  BACKGROUND

Broadcom filed this action on July 1, 2005, and amended its complaint two months later. Broadcom's First Amended Complaint alleged that Qualcomm engaged in a variety of anticompetitive practices in order to obtain and maintain its monopoly in the CDMA chipset market and then engaged in a variety of additional anticompetitive schemes to extend that monopoly into the WCDMA technology market and the UMTS chipset market. Among the latter practices, the First Amended Complaint alleged, was Qualcomm's breach of its obligation to license its technology on fair, reasonable, and non-discriminatory ("FRAND") terms and its acquisition of Flarion Technologies, a company located in Bedminster, New Jersey. The First Amended Complaint alleged that Qualcomm's actions harmed competition in both the technology and chipset markets, injured Broadcom and similarly situated companies, and,

---

[1] Qualcomm Incorporated's Memorandum of Points and Authorities in Support of Its Motion to Transfer, *Meyer v. Qualcomm Inc.*, No. 08-cv-0655-WQH (LSP) (S.D. Cal. May 1, 2008), at 8 (attached hereto as Exhibit A); Qualcomm Incorporated's Memorandum of Points and Authorities in Support of Its Motion to Transfer, *Valikhani v. Qualcomm Inc.*, No. 08-cv-0786-WQH (JMA) (S.D. Cal. May 2, 2008), at 7 (attached hereto as Exhibit B).

- 2 -

ultimately, harmed consumers. The First Amended Complaint stated eight claims for relief under federal antitrust law, one claim for unfair competition under New Jersey and other state antitrust or unfair competition statutes, and four common-law claims.

In October 2005, this Court issued an order to show cause why the case should not be transferred to either the Southern or Central District of California. Dkt. 21. Noting that both Broadcom and Qualcomm have their principal places of business in California and that many of the claims have nationwide significance, the Court suggested that the case "would have been more-properly brought" in California. *Id.* at 1. In response to that Order, Qualcomm stated that while it did not object to venue in New Jersey, it considered the Southern District of California a more appropriate venue than the Central District. Dkt. 25, at 2.[2]

Qualcomm filed a motion to dismiss for failure to state a claim upon which relief can be granted in December 2006, and this Court granted the motion. Broadcom appealed to the Third Circuit, which overturned the dismissal of all but one of Broadcom's monopolization and attempted monopolization claims under §§ 1 and 2 of the Sherman Act. *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007). However, the Third Circuit upheld this Court's dismissal of Broadcom's attempt to enjoin Qualcomm's acquisition of New Jersey-based Flarion Technologies, a key link to this venue. *Id.* at 321. Broadcom then filed its Second Amended Complaint, without any allegations about Flarion, on November 2, 2007. The Second Amended Complaint states three claims under federal antitrust law and five claims under California law,

---

[2] Consistent with its having filed this suit in New Jersey, Broadcom asserted that it was "properly venued" in the District of New Jersey at that time. Dkt. 26, at 2; *see also* Dkt. 44, at 1 (noting same in order vacating order to show cause). In September 2005, Broadcom also made Qualcomm's agreement not to move to transfer or to dismiss on grounds of improper venue one of the conditions for Broadcom's consent to an extension of time for Qualcomm to respond to Broadcom's First Amended Complaint. *See* Dkt. 23, at 1. As explained throughout this brief, changes that have occurred since the return of the case from the Third Circuit now make transfer to the Southern District of California appropriate.

- 3 -

one under California's unfair competition law and four under the common law. Qualcomm's motion to dismiss the state-law claims remains pending.

Within the last two months, two groups of plaintiffs in California filed class actions against Qualcomm focusing on very much the same allegations that Broadcom has made in the instant case. The first case, *Valikhani v. Qualcomm Inc.*, No. 3:08-cv-00786-WQH-JMA (S.D. Cal.), was initially filed in California Superior Court and was removed to the Southern District of California in April 2008. The second, *Meyer v. Qualcomm Inc.*, No. 3:08-cv-00655-WQH-LSP (S.D. Cal.), was filed in the U.S. District Court for the Southern District of California on April 10, 2008. The allegations in these class actions overlap to a considerable extent with the allegations in this case, as Qualcomm concedes in its motions to transfer the California cases to this Court. Qualcomm notes that the "similarity is borne out by a simple comparison of the complaints, both of which … allege the same theory of anticompetitive conduct, accuse Qualcomm of the same allegedly non-FRAND licensing practices and assert similar causes of action under the same state and federal antitrust laws." (Qualcomm *Meyer* Transfer Motion at 6.) Both those cases and this one will require resolution of numerous common issues of fact and law, including:

- Whether Qualcomm represented to members of the European Telecommunications Standards Institute ("ETSI") that it would license its patents on fair, reasonable, and non-discriminatory ("FRAND") terms;
- Whether ETSI and other standard-setting organizations only adopted UMTS as the mobile standard based on Qualcomm's representations that it would offer patents on FRAND terms;

- Whether Qualcomm offers licenses on FRAND terms, or whether Qualcomm requires licensees to pay unfair, unreasonable or discriminatory royalty rates; and

- Whether Qualcomm abused its dominance in the CDMA technology market to build a monopoly in the newer, growing UMTS chipset market.

## III. ARGUMENT

### A. Legal Standards

Transfer to another district under 28 U.S.C. § 1404(a) is appropriate when doing so will promote the convenience of the parties and serve the interests of justice. *See, e.g., Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 449 (D.N.J. 1999). A party may move to transfer at any juncture, *Schwilm v. Holbrook*, 661 F.2d 12, 16 (3d. Cir. 1981); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991), and a plaintiff's request for transfer should be judged by the same standards as a defendant's. *See, e.g., In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004) ("The Supreme Court has clearly indicated that either a defendant or a plaintiff can move for change of venue under § 1404 and that the same treatment and consideration should be given to the motion for transfer regardless of who the movant of that motion may be."); *Aventis Pharms. S.A. v. Sandoz, Inc.*, No. 06-3671, 2007 WL 1101228, at *2, n.1 (D.N.J. Apr. 10, 2007); *cf. Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990) (same rule as to governing law in diversity cases applies whether plaintiff or defendant initiates transfer).

The decision whether to transfer a case requires a court to balance a number of factors on a case-by-case basis. *See, e.g., Stewart Org.*, 487 U.S. at 29; *American Tel. & Tel. Co.*, 736 F. Supp. 1294, 1305-1306 (D.N.J. 1990). The private interests to be considered include (1) the plaintiff's forum preference; (2) the defendant's preference; (3) where the claim arose; (4) the

- 5 -

parties' ability to travel; (5) the convenience of the witnesses and the possibility they would not be available for trial; and (6) the location of relevant documents. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Walsh v. Chez*, No. 05-286, 2006 WL 2583623 (E.D. Pa. Sept. 6, 2006); *Campus Dimensions, Inc. v. On-Campus Marketing Concepts, Inc.*, No. 94-649, 1994 WL 470188 (E.D. Pa. Aug. 25, 1994); *cf. Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947). The public-interest factors include (1) the enforceability of the judgment; (2) practical considerations to make the trial easy, expeditious, or inexpensive; (3) relative court congestion and administrative loads; (4) the local interest of each forum in actually litigating the dispute; (5) the public policies of each forum; and (6) each trial judge's familiarity or expertise in the applicable law. *Jumara*, 55 F.3d at 879. On balance, these factors weigh heavily in favor of transferring this action to the Southern District of California.

> **B.    This Court Should Transfer This Action to the Southern District of California Because of the Presence of Two Related Cases There**

Efficiency in the use of judicial and party resources counsels in favor of transfer when related cases are being litigated simultaneously in different districts. *See, e.g., Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to protect."). The Third Circuit and the District Court for the District of New Jersey have repeatedly made clear that "[w]here related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals.'" *Lawrence*, 56 F. Supp. 2d at 453; *see Am. Cyanamid Co. v. Eli Lilly & Co.*, 903 F. Supp. 781, 787 (D.N.J. 1995) (citing *Continental Grain Corp.*, 364 U.S. at 19); *LG Elec. v. First*

- 6 -

*Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 592 (D.N.J. 2001) ("The interests of justice strongly favor transfer of a case to another jurisdiction where a related matter is pending.").

There is no dispute between the parties that this case and the class actions recently filed in the Southern District of California are related in this sense. In its motions filed in the Southern District of California to transfer those cases to this District, Qualcomm argues that moving all three cases to a single district will "prevent the needless duplication of time, cost and judicial resources" because, in relation to the California cases, this case constitutes "a largely identical action." (Ex. A at 1; Ex. B at 1.) Qualcomm suggests that the "similarity is borne out by a simple comparison of the complaints, both of which ... allege the same theory of anticompetitive conduct, accuse Qualcomm of the same allegedly non-FRAND licensing practices and assert similar causes of action." (Ex. A at 6; Ex. B at 6.)

Because the allegations in Broadcom's Second Amended Complaint run parallel to the allegations in *Meyer* and *Valikhani*, it is highly likely that many of the same witnesses will be deposed in the California cases, and that Broadcom, Qualcomm, and the plaintiffs in the California cases will seek discovery of like documents and records. Again, Qualcomm concedes as much. "Because the claims and allegations are essentially the same," Qualcomm asserts in its motions to transfer the California cases to this Court, "both suits would require much of the same motion practice, document discovery and deposition and in-court testimony." (Ex. A at 6; Ex. B at 6.) Not only does litigation in two fora increase the burden on all parties, but this will require two different courts to rule on the same objections and disputes that likely will arise throughout the trial and discovery process. Such a process poses an intolerable risk of inconsistent rulings. *Liebig v. Schneider Nat'l Bulk Carriers, Inc.*, No. 9204773 (AMW), 1993 U.S. Dist. LEXIS 1681, at *6 (D.N.J. Feb. 10, 1993) ("The Court is unwilling to sanction this waste of judicial

- 7 -

resources or to create the risk of inconsistent verdicts.").[3]

Indeed, judges in this District have held that the presence of a related action in an alternative forum can, on its own, be enough to compel transfer. In *Todd Shipyards Corp. v. Cunard Line Ltd.*, 708 F. Supp. 1440 (D.N.J. 1989), the plaintiff filed a motion to confirm an arbitration award in the Northern District of California while the defendant moved to vacate that same arbitration award in the District of New Jersey. Although the parties could make no showing that transfer would be more convenient for either party, or that either forum had a greater interest in the dispute, the court transferred the action to the Northern District of California because "private interest factors were less important than the public interest in having related disputes litigated in the same forum." *Am. Tel. & Tel. Co.*, 736 F. Supp. at 1310; *accord Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 286 (E.D. Pa. 2001) (the presence of related litigation in a separate fora "is powerful enough to tilt the balance in favor of transfer even when the convenience of parties and witnesses would suggest the opposite.").

C.  **Both the Private- and Public-Interest Considerations Support Transfer to the Southern District of California.**

   1.  **Private Interests Will Best Be Served in the Southern District of California**

Among the private-interest factors to be considered in weighing a transfer motion are ease of access to proof, availability of compulsory process of unwilling witnesses, and ease of

---

[3] Cases do not have to be perfectly duplicative—involve the exact same claims between identical parties—for transfer to be warranted. Even when cases are related but not identical, "the interests of justice, judicial administration and economy weigh heavily in favor of transfer." *American Tel. & Tel. Co.*, 736 F. Supp. at 1312. Having related but not identical disputes "stemming from basically the same underlying facts" before a single court allows that court to realize economies in "activities such as document production, depositions and other discovery, pre-trial management, motions and trial scheduling." *Security Sav. Bank v. Green Tree Acceptance, Inc.*, 703 F. Supp. 350, 355 (D.N.J. 1989).

- 8 -

attendance by willing witnesses. *Am. Cyanamid Co.*, 903 F. Supp. at 787. *All* of these factors weigh in favor of transfer to the Southern District of California. In addition, Broadcom's initial choice of New Jersey as the venue for this case should be given little weight in light of several more recent changes in circumstances that now make the Southern District of California a superior venue.

Trial in California will be easier for both parties, for party witnesses, and for non-party witnesses. Both Qualcomm's and Broadcom's principal places of business are in California, with key personnel residing in southern California. Virtually all party depositions will likely take place in California.[4] Qualcomm concedes these points in its transfer motions, acknowledging that the Southern District of California "ordinarily would be a convenient venue" for it and that "there is little doubt that relevant evidence and witnesses are located in [that] [d]istrict." Ex. A at 8; Ex. B at 7. Requiring the party witnesses to travel to New Jersey to provide in-court testimony, while they must appear simultaneously in the California court, imposes a significant inconvenience on the overwhelming number of witnesses who are located in California. This court has recognized that the considerable expense of transporting witnesses to a distant jurisdiction supports transferring the case, and the same outcome should result here. *See Sec. Sav. Bank v. Green Tree Acceptance, Inc.*, 703 F. Supp. 350, 355 (D.N.J. 1989); *see also Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 534 (D.N.J. 2000)

---

[4] *See* Qualcomm Incorporated's Amended and Supplemental Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), at 2-18 (attached hereto as Exhibit C) (listing 53 Qualcomm employees with office addresses in San Diego as likely to have discoverable information and acknowledging that many relevant Qualcomm documents could be at Qualcomm's San Diego campus); Plaintiff Broadcom Corporation's Amended Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a), at 2-11, 37 (attached hereto as Exhibit D) (listing 72 present or former Broadcom or Qualcomm employees with office addresses within 100 miles of the U.S. courthouse in San Diego as likely to have discoverable information and identifying San Diego as one of the locations where relevant Broadcom documents are located).

("convenience of potential witnesses also must be balanced."). Like the claims of the plaintiffs in the California cases, Broadcom's claims focus on the conduct of individuals based in southern California area; as "these witnesses will likely play a key role in the development of the case," this fact "tips in favor of transfer." *Cuco v. United States*, No. 05-5347, 2007 WL 2904193, at *3 (D.N.J. Oct. 2, 2007).

The parties may lose testimony from key witnesses should the trial proceed in this Court. Some non-party witnesses, such as former Qualcomm employees, may be resistant to testifying and refuse to appear voluntarily. Transfer would reduce the risk that a party will be unable to subpoena any non-party witnesses who reside in southern California. *Sec. Sav. Bank, SLA*, 703 F. Supp. at 355 (because New Jersey lacked proper jurisdiction over unwilling witnesses, the fact that both parties will possibly be unable to call certain witness leans toward transfer to a jurisdiction with subpoena power).

Both the California cases and this case will require testimony about Qualcomm's participation in ETSI and other standards setting organizations; about the meaning of FRAND to Qualcomm and to standards-setting organizations; about Qualcomm's royalty rates and negotiation patterns. Broadcom anticipates calling third-party witnesses to provide this information as well as context about the chipset market, overviews of the standard-setting practice, and Qualcomm's negotiations with licensees. Many handset manufacturers, whose employees may provide this testimony, are Asian companies, *see* Ex. D, at 13-36 (identifying 74 Singaporean, Chinese, Japanese, Taiwanese, and Korean companies as having employees likely to possess discoverable information), and their employees will have an easier time traveling to California than to New Jersey. Broadcom expects that the class-action plaintiffs will need to call

similar third-party witnesses to aid the court in the California actions as well. It is illogical for the witnesses to have to testify to these facts in two courts on opposite sides of the country.

Much of Qualcomm's deceptive behavior—the very behavior that generated this action—took place in or was directed from southern California. When the key activities in question took place outside the forum state, transfer is warranted. *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 482 (D.N.J. 1993) (holding that the fact that "neither the design nor the development nor the manufacture of the . . . products involved in this action occurred in New Jersey" supported transfer).

While Broadcom's initial choice of New Jersey as the venue for this action might normally count against transfer, changed circumstances since the return of this case from the Third Circuit eliminate the significance of that choice as a reason to retain the case in this Court.

First, one of the strongest factual links connecting this case to New Jersey has been eliminated by the Third Circuit's affirmance of this Court's dismissal of Broadcom's antitrust claim that rested on Qualcomm's acquisition of New Jersey-based Flarion Technologies.

Second, the initiation of two class actions in the Southern District of California last month that raise virtually identical allegations to this case militate in favor of consolidating all three related cases in that venue. Moreover, while this case is somewhat more advanced than the California cases, all three cases are at an early stage. Qualcomm has not yet answered. No expert discovery has occurred. Only one deposition has been taken in this case, and none has been taken in the California actions. No trial dates have been set. The document discovery that has commenced has been electronic document production that is easily transferable to California. The two new cases filed in California court thus present a new opportunity for all parties to

- 11 -

benefit from the economies that result when common subject matter is litigated together in a single court.

Third, while Broadcom's First Amended Complaint stated claims under the laws of numerous states, including New Jersey, all of the state-law claims in Broadcom's Second Amended Complaint are stated under California law. While this Court is of course perfectly capable of adjudicating claims under California law, the greater significance of California-law claims—both in Broadcom's Second Amended Complaint and in the three cases considered as a group—constitutes an additional factor favoring transfer to California. *See Sec. Sav. Bank SLA,* 703 F. Supp. at 354 (the presence of another state's law supports transfer to avoid "forcing a court wholly unfamiliar with that State's laws to apply the same to the instant action.").

Fourth, much of Qualcomm's deceptive behavior that gives rise to this suit occurred in or was directed from California. As reflected in allegations that appear for the first time in Broadcom's Second Amended Complaint, Broadcom has gained additional information over the past year and a half that Qualcomm's misconduct sprang from California. Qualcomm planned a campaign to intentionally manipulate and sabotage the standard setting process in its headquarters. Second Amended Complaint ¶ 8. Many of Qualcomm's licensing negotiations took place in California. California was the locale of many internal Qualcomm discussions about setting royalties in an unreasonable, unfair, and discriminatory manner, *id.* ¶¶ 7, 27, 107, false commitments to license on FRAND terms, *id.* ¶ 7, and Qualcomm's assertions that its patents are essential to comply with the relevant standards, *id.* ¶¶ 46, 103. Qualcomm has also attempted to collect royalties on items that are beyond its patented technology, *id.* ¶ 110, demanded non-reciprocal patent rights, *id.* ¶ 112, and collected double royalties by insisting

- 12 -

on licenses at the component and handset level, *id.* ¶ 113; *see also id.* ¶¶ 58, 61, 65, 67, 70, 103, 117, 123.

Because of these changed circumstances, this Court's initial instinct, that this case "would have been more-properly brought" in California, Dkt. 21, at 1, has now been vindicated.

### 2. Transferring the Action to California is Also in the Public Interest

Public-interest factors governing transfer motions include the enforceability of the judgment; practical considerations that make a trial easy or expeditious; relative court congestion and administrative loads; local interest in litigating the dispute; public policies of each forum; and the trial judges' relative familiarity with the applicable law. *Jumara*, 55. F.3d at 879. These factors also indicate that the proper venue for this case is the Southern District of California.

Solely from the perspective of practicality, discovery and trial in this action will be easier at this juncture if the case is transferred to the Southern District of California and coordinated or consolidated with the recently-filed class actions. Many of the relevant witnesses, documents, and companies are based in California. *See supra* n.4. Again, Qualcomm concedes as much in its motions to transfer, acknowledging that "there is little doubt that relevant evidence and witnesses are located in" the Southern District of California. Ex. A at 8; Ex. B at 7. This action shares common questions of fact and law with the California class actions. Coordinated discovery in the state where many witnesses, relevant documents, and both companies are located would be much more efficient than having disparate discovery efforts proceed on opposite ends of the country.

California has a greater interest in the outcome of this litigation. Both companies are headquartered in California. A state has a "compelling interest in regulating the conduct of businesses in its state." *Liggett*, 102 F. Supp. 2d at 536. While both companies have ties to New

Jersey, California has a greater interest in the outcome of litigation between two companies that are crucial to the cell phone industry within California.

Finally, these cases will hardly be the Southern District of California's first foray into the complicated chipset market and the claims surrounding Qualcomm's many patents. In *LG Electronics,* this Court recognized that when the "center of gravity" surrounding a party's patent infringement claims exists in an alternate forum, that court is likely to be a "more convenient forum for the parties and a majority of the witnesses," especially when the transferee forum "already has a number of related cases pending before it and has already construed one of the patents at issue in this litigation." 138 F. Supp. 2d at 593. In the present dispute between Broadcom and Qualcomm, the Southern District of California has overseen four complicated disputes—two of which are highly relevant to this action—requiring the dissection of detailed cell-phone technology, and overseeing the two class actions will demand that the Southern District of California once again immerse itself in the same. Indeed, two of the Broadcom-Qualcomm suits adjudicated in the Southern District of California involved two of the same standard-setting bodies and technical standards that are at issue in this case. One concerned the H.264 video compression standard issued by the Joint Video Team formed by expert groups of the International Organization for Standardization, the International Electrotechnical Commission, and the International Telecommunication Union. There, Qualcomm was found to have abused the standards process and thereby waived its patent rights. The other addressed the GSM/GPRS/EDGE cell-phone standards established by ETSI.

Furthermore, a California federal court has considerable experience applying California state law and routinely adjudicates claims rooted in the same California laws that Broadcom and the class-action plaintiffs allege Qualcomm has violated. As this Court has recognized, "[a]n

- 14 -

- 15 -

important public interest factor is the desire to have the case tried before judges familiar with the applicable law." *Liggett Group, Inc.*, 102 F. Supp. 2d at 537. The Southern District of California is not just familiar with the state law and federal law applicable in this case, it is well versed in the special legal requirements of the very dispute in this case.

## IV.  CONCLUSION

For the foregoing reasons, this case should be transferred to the Southern District of California.

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

By: /s David S. Stone
David S. Stone, Esq.
dstone@bsfllp.com

*Counsel for Plaintiff Broadcom Corporation*

Dated: May 16, 2008

## CERTIFICATE OF SERVICE

I, David S. Stone, hereby certify that the foregoing Motion to Strike Affirmative Defense and Related Allegations and to Dismiss Counterclaims, which was filed and served electronically on May 16, 2008 on counsel for all named parties through the Court's *ECF system*, including:

William J. O'Shaughnessy, Esq.
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4056

Peter T. Barbur, Esq.
Elizabeth Grayer, Esq.
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Steven J. Kaiser, Esq.
CLEARY, GOTTLEIB, STEIN & HAMILTON
200 Pennsylvania Avenue, NW
Washington, DC 20006

/s/ David S. Stone
David S. Stone, Esq.
dstone@bsfllp.com
Boies, Schiller & Flexner LLP
150 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Tel: 973-218-1111
Fax: 973-218-1106
*Counsel for Plaintiff Broadcom Corporation*