EVAN R. CHESLER (*pro hac vice*)
PETER T. BARBUR (*pro hac vice*)
ELIZABETH L. GRAYER (*pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: 212.474.1000
Facsimile: 212.474.3700

WILLIAM S. BOGGS (Bar No. 053013)
BRIAN A. FOSTER (Bar No. 110413)
TIMOTHY S. BLACKFORD (Bar No. 190900)
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone: 619.699.2700
Facsimile: 619.699.2701

Attorneys for Defendant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MERDAD VALIKHANI, an individual, on behalf of himself, the general public and all others similarly situated,

Plaintiff,

v.

QUALCOMM INCORPORATED, a Delaware corporation, and DOES 1-100,

Defendants.

CASE NO. 08 cv 0786 WQH (JMA)

**QUALCOMM INCORPORATED'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO TRANSFER**

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

Date: June 23 2008
Time: 11:00 a.m.
Judge: Hon. William Q. Hayes

Qualcomm Incorporated ("Qualcomm") respectfully submits this reply memorandum in further support of its motion, pursuant to 28 U.S.C. § 1404(a), for an order transferring this action to the United States District Court for the District of New Jersey, in which an earlier-filed, related action is currently pending.

## I. INTRODUCTION

Plaintiff Merdad Valikhani's Opposition (hereinafter "Opposition" or "Opp.") does not dispute that this action is virtually identical to litigation that is currently pending—and has been pending for three years—between Qualcomm and Broadcom in the District of New Jersey (hereinafter the "NJ Action"). Instead, Valikhani tries to obscure this reality by referring to a litany of factors that might apply were this motion simply about whether California is, in the abstract, a more convenient forum for this lawsuit than New Jersey.[1] However, that is not the relevant question. Qualcomm is already knee-deep litigating the same factual and legal issues in New Jersey, and nothing that this Court can decide will change that fact. The sole question on this motion is whether there is any reason for these same issues to be litigated separately in two different places—this Court and the District of New Jersey—as opposed to being litigated in a single place. Valikhani's Opposition does not even purport to offer any such reason.

Valikhani does point to the fact that Broadcom, on the last business day before Valikhani's opposition to Qualcomm's motion to transfer was due to be filed in this Court, conveniently filed a motion to transfer its three-year-old case from New Jersey to this Court—relying heavily on the fact that Qualcomm had removed this action to this Court and on certain statements Qualcomm made in its motion to transfer this action to New Jersey. Valikhani even suggests that this Court should postpone resolution of Qualcomm's prior-filed motion until there has been a decision on Broadcom's later-filed motion to transfer the NJ Action to this Court. That is nonsense. Broadcom *chose* to bring suit in the District of New Jersey, repeatedly represented to the court in New Jersey that New Jersey is a convenient forum and even demanded that Qualcomm *not* seek to transfer the NJ Action to another court. Broadcom's eleventh-hour

[1] Plaintiff's Opposition is a virtual carbon copy of the opposition brief filed under the caption *Meyer v. Qualcomm, Inc.*, No. 08-CV-655 (S.D. Cal., Apr. 10, 2008).

motion to transfer is thus frivolous and should have no bearing on this Court's resolution of Qualcomm's motion to transfer. Indeed, it would be perverse to hold up resolution of this motion pending resolution of Broadcom's motion because Broadcom's motion itself relies heavily on the presence of this action in this Court—which obviously would not be the case if Qualcomm's motion to transfer is granted.

Valikhani next argues that certain public and private factors favor this District over the District of New Jersey. That misses the point. The question is not whether the relevant factual and legal issues should be litigated in California *or* New Jersey. Rather, the question is whether it makes sense to litigate these issues simultaneously in California *and* New Jersey. Given that the New Jersey case is already pending and has progressed far beyond this case—with dispositive motions resolved (including an appeal), millions of documents produced and numerous discovery rulings having been made—transfer of this case to New Jersey would undeniably be simpler and more efficient for the parties, the witnesses and the courts. The "public" and "private" interests described by Valikhani are entirely offset here by the potential costs of duplicative litigation.

Finally, Valikhani argues that "coordination" of the two actions across coasts is somehow just as good as transferring this action to the District of New Jersey. Valikhani's notion of "coordination", however, has no support in the law and would do nothing to mitigate the inefficiencies involved in maintaining duplicative litigation in two courts instead of one.

## II. ARGUMENT

### A. The Pendency of Broadcom's Conveniently-Timed Motion Should Not Delay Transfer of This Action.

Valikhani does not—because he cannot—seriously dispute that this case involves issues that substantially overlap with those in the NJ Action. Nor is there any dispute that the New Jersey case was filed first (indeed, nearly three years earlier) or that there have been significant proceedings in New Jersey. These considerations alone are dispositive.

According to Valikhani, however, this Court should ignore these factors because Broadcom, the plaintiff in the earlier-filed action, after three years of litigating in the forum it selected, has suddenly and conveniently sought to have its case transferred to this Court. (Opp. at

1-2, 15-16.) Indeed, Valikhani goes so far as to suggest that this Court defer resolution of the present motion until after Broadcom's later-filed motion to transfer is decided. These arguments are meritless.

*First*, Broadcom's patently frivolous motion should present no obstacle to resolution of this motion. As Broadcom concedes in its transfer motion, Broadcom itself chose to file in New Jersey and has repeatedly asserted that the NJ Action was properly venued in the District of New Jersey. (Parisi Decl. Ex. 2 at 3 n.2; *see also* Loft Supp. Decl. Ex. 2 at 2-3 (letter from Broadcom to the Court in New Jersey arguing that the "causes of action at issue in this case arose substantially in the Newark Division" of the District of New Jersey because three large cell phone manufacturers have important facilities there and the District of New Jersey is "convenient" for "litigants, counsel and witnesses").) As a condition for agreeing to an extension of time to move against or answer Broadcom's complaint, Broadcom even made Qualcomm agree that it "would not move to transfer or dismiss on grounds of improper venue." (Parisi Decl. Ex. 2 at 3 n.2.) In its complaint in the NJ Action, Broadcom also alleged that it "operates a significant facility in Matawan, New Jersey, which is an important part of the Broadcom business at issue in this lawsuit" and that "New Jersey is a center for other key players in the wireless industry". (Loft Supp. Decl. Ex. 1 ¶¶ 1, 29.)

Broadcom's motion is all the more frivolous—and Valikhani's reliance on it is all the more misplaced—because the NJ Action has been litigated for three years, and the New Jersey court already has become familiar with many of the legal and factual issues. Qualcomm's original motion to dismiss has been resolved (even on appeal), millions of pages of documents have been produced and numerous discovery disputes have been presented to and resolved by the court in New Jersey, which has also set a fact discovery cut-off of December 19, 2008, and has indicated that the case must be trial ready by June of 2009. (Blackford Decl. ¶¶ 4-9; *id.* Ex. 6.) Any transfer of the NJ Action would thus result in delay and judicial inefficiency, which alone is sufficient for the court in New Jersey to deny Broadcom's motion.

*Second*, Valikhani essentially asks this Court to ignore the well-settled rule that, when substantially related litigation is pending in another District Court, transfer is proper in favor of

the case that was filed *first*, not second. *Am. Tel. & Tel. Co. v. MCI Commc'ns Corp.*, 736 F. Supp. 1294, 1308 (D.N.J. 1990) ("Where transfer of related cases is contemplated, the prior pending action has priority in venue." (quotations and citation omitted)). Broadcom's action was filed three years ago and, notwithstanding Broadcom's conveniently-timed transfer motion, still "has priority in venue". *Id.*

For these reasons, Broadcom's belated motion to transfer should not operate to delay this Court's decision on whether to transfer the present action. Given the inherent contradictions in Broadcom's motion, as well as the complexities in transferring a three-year-old case to a new forum, there is little chance that Broadcom's motion will be granted or, in any event, no obvious reason for the court in New Jersey to reach the motion anytime soon. In the meantime, Qualcomm should not be forced to await the eventual denial of Broadcom's motion while fighting duplicative litigation on two sides of the country. Qualcomm's motion to transfer this action should be decided without regard to Broadcom's motion to transfer.

**B. The Transfer "Factors" Discussed in Plaintiff's Opposition Are Irrelevant in the Present Situation.**

When, as here, there is an earlier-filed, related case pending in another district, the "interests of justice" served by transferring the later action are the overriding considerations in the transfer analysis. *See London & Hull Maritime Ins. Co. v. Eagle Pac. Ins. Co.*, No. 96-CV-1512, 1996 WL 479013, at *3 (N.D. Cal. Aug. 14, 1996) ("'[I]nterests of justice' consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors point the other way."). Litigation of related claims in the same tribunal results in "more efficient conduct of pretrial discovery, saves witnesses time and money in both trial and pretrial proceedings, and avoids duplicative litigation and inconsistent results, thereby eliminating unnecessary expense to the parties while at the same time serving the public interest". *Nieves v. Am. Airlines*, 700 F. Supp. 769, 773 (S.D.N.Y. 1988) (citation omitted). Thus, even if Valikhani could demonstrate that all other factors to which he refers (Opp. at 4) weighed against transfer, the public interest in having related or identical cases proceed in the same forum still would mandate transfer. *See Am. Tel. & Tel. Co.*, 736 F. Supp. at 1309-13 (finding transfer appropriate

when "the public interests in transferring a case to a forum in which a related case is pending [are] sufficient to outweigh the private interest balance which does not favor transfer").

Valikhani concedes that there is substantial overlap between his case and Broadcom's. As he notes, "Qualcomm's liability does hinge on many of the same factual and legal issues for both on [sic] Plaintiff's claims and Broadcom's claims". (Opp. at 13.) Broadcom concedes this fact as well. Throughout its own transfer motion, Broadcom mentions that Valikhani's case "present[s] questions of law and fact nearly identical to Broadcom's Second Amended Complaint" (Parisi Decl. Ex. 2 at 1), that "[t]he allegations in these class actions overlap to a considerable extent with the allegations [in Broadcom's complaint]" (*Id.* at 4), and that both Valikhani's case and Broadcom's "will require resolution of numerous common issues of fact and law" (*Id.*).[2]

As explained in Qualcomm's opening brief, this factual and legal overlap means that, barring transfer, substantially all of the discovery and evidence in this action will duplicate the discovery and evidence in the NJ Action, witnesses will be required to testify in two different courts about the same events involving the same issues and overlapping if not identical motions will have to be resolved in two courts. (Def.'s Mem. Supp. Transfer at 6-7.) Accordingly, the interests of justice, judicial economy and the avoidance of the possibility of inconsistent results require one District Court to preside over these cases.

In light of these fundamental considerations, the following additional factors discussed in Valikhani's Opposition are either irrelevant or neutral to the transfer analysis.

---

[2] Valikhani's attempts to highlight several irrelevant differences between his case and Broadcom's are unavailing. (*See* Opp. at 12-13.) It is well-settled that, to warrant transfer, "the two actions need not be identical, but only sufficiently similar". *Jim Walter Corp. v. Cont'l Cas. Co.*, 91-CV-3583, 1992 WL 162851, at *7 (D.N.J. June 1, 1992); *see also Alexander v. Franklin Res., Inc.*, No. 06-CV-7121, 2007 WL 518859, at *3 (N.D. Cal. Feb. 14, 2007) (transferring in favor of an earlier-filed action "because it [was] apparent that regardless of the true nature of plaintiff's claims, the instant claims and the New Jersey claims ar[o]se out of the same factual predicate"); *Am. Tel. & Tel. Co. v. MCI Commc'ns Corp.*, 736 F. Supp. 1294, 1309 (D.N.J. 1990) (finding transfer appropriate even though the action to be transferred involved additional claims and an additional party). Nor, as Valikhani suggests, do the parties need to be identical for a court to transfer in favor of earlier-filed, related litigation. *See, e.g.*, *Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 539 (D.N.J. 2000) ("While the [related] Case does not involve the same litigants as this litigation, it appears the two cases share similar, if not related, issues.").

a. *Qualcomm's "Home District" Is Irrelevant.*

Although Valikhani asserts that it would be "unprecedented" to transfer a case out of a defendant's "home judicial district" (Opp. at 3), it is in fact routine for a court to transfer a case from the defendant's "home district" when, as here, the defendant is already litigating related cases in another forum. *See, e.g., Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 453 (D.N.J. 1999) (transferring case from defendant's home district in favor of an earlier-filed, related case pending elsewhere); *see also Westhampton Care, Inc. v. Law Co., Inc.*, 896 F. Supp. 1093, 1094-95 (D. Kan. 1995) (transferring case from defendant's "home forum" in favor of an earlier-filed, related case pending elsewhere). Courts reason that "home district" concerns are irrelevant in these situations because "[d]efendants have demonstrated their willingness to make all necessary witnesses and documents available" outside of the home forum. *Lawrence*, 56 F. Supp. 2d at 454-55. The same is true here.

b. *Plaintiff's Choice of Venue Is Entitled to Little Weight.*

The deference normally afforded to a plaintiff's choice of venue is limited in the present case by a number of other considerations. *First*, and most importantly, the factor is offset by the potential costs of duplicative litigation. *See Lawrence*, 56 F. Supp. 2d at 453 ("The deference to the Plaintiffs' choice of forum . . . is limited . . . by the fact that maintaining the instant action in the District of New Jersey will result in duplicative litigation."). *Second*, Valikhani is allegedly a resident of Los Angeles County, California (Compl. ¶ 8), which is in the Central, not Southern, District of California. Even the cases Valikhani cites in his Opposition hold that choice of venue is undermined "where a plaintiff's choice of forum is a district other than one in which he resides". *Strigliabotti v. Franklin Res., Inc.*, No. C-04-0883, 2004 WL 2254556, at *3 (N.D. Cal. Oct. 5, 2004). *Third*, as Qualcomm noted in its opening brief and as Valikhani does not contest, courts consistently hold that "plaintiffs' choice of forum is less significant where the plaintiff purports to represent a nationwide class". *Alexander v. Franklin Res., Inc.*, No. 06-CV-7121, 2007 WL 518859, at *2 (N.D. Cal. Feb. 14, 2007).

/////

/////

c. *The Applicable-Law Factor Is Neutral at Best.*

Valikhani argues that, because the claims in his complaint arise under California law, this Court is in a better position to preside over this case than the District of New Jersey. (Opp. at 6-7.) Valikhani, however, ignores two important points. *First*, the very cases Valikhani cites clearly hold that other federal courts are fully capable of applying California law. *See Strigliabotti*, 2004 WL 2254556, at *5 ("The Court finds that a New Jersey court is fully capable of applying California law, and that this is a neutral factor in the transfer analysis."). *Second*, Valikhani overlooks that Broadcom's complaint in the NJ Action also includes claims asserted under California law, meaning that the court in New Jersey will need to resolve issues of California law regardless whether this case is transferred. (Opp. at 3-4.) Accordingly, this Court's familiarity with California law does not militate against transfer.

d. *Court Congestion Has No Role in the Analysis.*

Valikhani cites a variety of statistics in an attempt to show that "the District of New Jersey is substantially more congested" than this District. (Opp. at 8.) Valikhani's statistics are highly misleading and do not support his "congestion" argument.[3] In any event, congestion is irrelevant when there already is duplicative litigation pending in another forum. If this action is not transferred, two courts instead of one will preside over litigation of the same factual and legal issues. If, on the other hand, the action were to be transferred, congestion would be reduced in this District, while the District of New Jersey would suffer little net increase in congestion given the economies of having related litigation tried in a single forum. In short, congestion simply has no bearing on the transfer analysis when judicial economy can be served by having related litigation tried in one forum rather than two.

---

[3] Although the Opposition lists how many total *cases* are currently pending on the dockets of the respective Courts—5,972 for the District of New Jersey versus 2,134 for this District—the brief conveniently leaves out how many *judges* serve on each Court. Because the Southern District has fewer judges than the District of New Jersey (13 versus 17), the per-Judge caseload is actually higher in this District than in the District of New Jersey. *See* Admin. Office of U.S. Courts, Federal Court Management Statistics 2007 - District Courts, http://www.uscourts.gov/cgi-bin/cmsd2007.pl (last visited May 23, 2008) (567 actions per judge in the Southern District compared to 454 in the District of New Jersey).

e. *The Location of Evidence and Witnesses Is Irrelevant Here.*

Because the Broadcom case is already pending in New Jersey, the relevant factor is not the *location* of evidence and witnesses, but rather how many times the evidence must be produced and how many times the witnesses must testify. In any event, the location of relevant documents and evidence does not weigh against transfer. Any relevant documents will be produced as images on computer media (as has been the case in the NJ Action already). Such computer files can be shipped at negligible cost to Valikhani's counsel anywhere in the world, so the physical location of these documents in their original form is irrelevant.

**C. Valikhani's Proposal for "Coordination" Is Unsupported and Does Nothing to Alleviate the Inefficiencies of Duplicative Litigation in Different Courts.**

In an attempt to obscure the waste of time and money that would attend the simultaneous litigation of identical issues in this Court and in the District of New Jersey, Valikhani proposes that the two Courts "coordinate" the motion practice and discovery in the two cases. (Opp. at 11-16.) However, Valikhani cites no authority for the idea that potential "coordination" is relevant to the transfer analysis.[4] Indeed, although Valikhani offers several examples of ways in which this Court and the court in New Jersey could "coordinate" their efforts, he entirely fails to explain how such efforts would eliminate the inefficiency and inconvenience of having virtually identical cases proceed simultaneously in two separate courts.

For example, under Valikhani's view of "coordination", this Court still would have to devote a substantial amount of effort to revisiting issues that already have been decided in New Jersey because the kind of joint conferences and joint hearings Valikhani describes still would require the "attendance" (either physically or by telephone) of both Courts. (*See* Opp. at 14 ("With the parties' consent, the Court can order joint hearings in Judge Cooper's courtroom, while the Court attends by telephone.").) Indeed, under Valikhani's proposal, both Courts would

/////

---

[4] Indeed, the one case Valikhani cites that does discuss "coordination" in the transfer context actually concluded that "the interests of justice weigh *in favor of transfer*". *Bibo v. Fed. Express, Inc.*, No. 07-CV-2505, 2007 WL 2972948, at *4 (N.D. Cal. Oct. 10, 2007) (emphasis added).

have to consider the issues presented at such hearings, as well as issue separate decisions on those questions.

Nor would Valikhani's proposed "coordination" resolve any inconvenience for witnesses or for the parties. As Valikhani concedes, even under his proposal, this Court would "retain control over the unique aspects of this case". (Opp. at 14.) In addition, it is hard to imagine that telephonic attendance by parties, witnesses and the Court would eliminate the need for Qualcomm's employees and other witnesses to attend multiple, related proceedings on opposite ends of the country.

Finally, Valikhani's proposed coordination mechanisms do not address the potential for inconsistent deadlines and conflicting rulings on identical issues. Joint scheduling conferences would not change the simple fact that both Courts face their own scheduling constraints imposed upon them by the demands of their individual dockets. Similarly, joint hearings would not eliminate the potential for conflicting rulings, since each Court would still reach its own conclusions and issue its own rulings.

In sum, Valikhani's proposed "coordination" plan would simply add a degree of complexity to these proceedings without addressing the inefficiencies that would accompany litigation in two different forums.

## III. CONCLUSION

For the foregoing reasons, Qualcomm respectfully asks this Court to grant Qualcomm's motion to transfer pursuant to 28 U.S.C. § 1404(a).

Dated: June 16, 2008

DLA PIPER US LLP

By /s/ William S. Boggs

william.boggs@dlapiper.com

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Peter T. Barbur
Elizabeth L. Grayer

Attorneys for Defendant
QUALCOMM INCORPORATED