David C. Parisi, Esq. (162248)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com

Attorneys for plaintiff Merdad Valikhani,
on behalf of himself, the general public
and all others similarly situated

# UNITED STATES DISCRICT COURT

# SOUTHER DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERDAD VALIKHANI, an individual, on behalf of himself, the general public and all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED, a Delaware Corporation, and DOES 1-100, inclusive,<br><br>              Defendants, | CASE NO. 08 cv 0786 WQH (JMA)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS REPLY RE MOTION TO REMAND**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>**Date:** June 23, 2008<br>**Time:** 11:00 a.m.<br>**Judge:** Hon. William Q. Hayes |

## I. THE COMPLAINT DOES NOT ESTABLISH AN AMOUNT IN CONTROVERSY IN EXCESS OF $5,000,000

The crux of Qualcomm's removal argument is that the Complaint, as pled, establishes the requisite jurisdictional amount in controversy. Qualcomm's position, however, is based upon an improper reading of the Complaint and misconstrues applicable case law. The complaint does not specify a dollar amount being sought as damages. It is for this reason that Qualcomm cannot, for purposes of removal, assert that the Complaint alleges an amount in controversy above $5,000,000. *Guiglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (where, as here, "the allegation in the Jurisdiction and Venue section is not repeated in the Prayer for Relief and does not take account of attorney's fees, accounting of attorney's fees, accounting of moneys, or payment of back taxes and benefits, the complaint fails to allege a sufficiently specific amount in controversy.").

Qualcomm tries to make much of the allegation in the Complaint that, for the Service Class, there are approximately 76 million members. Qualcomm acknowledges that though not every one of these subscribers is alleged to have a UMTS-compliant device, they are all alleged to be members of the Service Class. This is because, as Plaintiff alleges in his Complaint, "end consumers who purchase their devices through cellular carriers pay more for UMTS devices than they would in the absence of the anticompetitive effects of Qualcomm's UMTS Licensing." Complaint, ¶74. These supracompetitive fees caused by Qualcomm are distributed through the carriers' service fees to all of their customers. Complaint, ¶84.

Qualcomm makes the unsupported jump in logic from these allegations that because there could be 76 million members in the Service Class, it is "facially apparent"[1] from the

---

[1] Plaintiff does not dispute that there may be cases where, from the allegation in a complaint, it is facially apparent that the amount in controversy exceeds $5 million. This is not, however, one of those cases.

Complaint that there must be more than $5 million in controversy. Qualcomm fails to address a key issue raised in Plaintiff's Motion –how many of the persons in the Service Class actually use the UMTS standard?[2]

If it turns out that only a miniscule fraction of the Service Class use the UMTS standard, and therefore only that small group of persons is purchasing devices subject to anticompetitive prices, then the amount in controversy is small. If, on the other hand, nearly all of the 76 million persons are purchasing cellular devices at supracompetitive costs, then there is a preponderance of evidence that the amount in controversy exceeds $5 million. Qualcomm has not even attempted to identify to this Court or Plaintiffs the number of Service Class members who had UMTS compliant devices which was bundled with their cellular service.

## II. QUALCOMM HAS NOT SUBMITTED SUFFICIENT EVIDENCE TO MEET ITS BURDEN

Qualcomm has supplied Plaintiff and this Court with some evidence, but the evidence is insufficient. What Qualcomm's evidence shows is that about 4.6 million UMTS devices were sold in the United States on a yearly basis between 2005 and 2007, making the Device Class approximately 14 million persons. It may be that, by its conduct, Qualcomm caused every one of these cellular phone purchasers to pay ten dollars too much for the cost of the phone, or five cents too much. If the former, then the controversy exceeds $5 million, but if the latter, it does not. Given that this case is about the technology on a silicon chip, it is not unreasonable to guess as to either assumption.

---

[2] Qualcomm did provide an estimate of 14 million UMTS devices sold in the United States in the three year period (Leyva Decl., ¶3), but this is not the Service Class. The Service Class is "all persons who purchased cellular service from any carrier in the United States *which bundles its cellular service with subsidized UMTS-compliant devices*." Complaint, ¶93 (emphasis added). Qualcomm does not identify the number of these persons.

Qualcomm also submitted evidence that it had revenues in 2007 of at least $1 billion from royalty revenue worldwide from UMTS devices. (Leyva decl., ¶5.) Qualcomm uses this sum to contend that it will cost over $5 million to comply with any injunctive relief enjoining UMTS licensing practices. Qualcomm does not identify what portion of this income comes from sales in the United States and fails to explain how all of its revenues could be impacted should an injunction issue preventing it from the alleged anticompetitive conduct.

Unfortunately, the evidence provided by Qualcomm requires that guesses be made. This evidence does not meet Qualcomm's burden of proving, by a preponderance of evidence, that the amount in controversy exceeds $5 million.

## III.  CONCLUSION

In a case such as this, the removing party bears the burden of proving the existence of facts to establish federal subject matter jurisdiction and there is a "strong presumption" against removal jurisdiction. *Gaus v. Mills Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); see also *Boyer v. Snap-On Tools, Corp.,* 913 F.2d 108. 111 (3rd Cir. 1990) (on a motion to remand, the court is to "resolve all contested issues of substantive fact in favor of the plaintiff . . ."). As the Ninth Circuit recognized, "[t]he removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *California ex rel. Lockyer v. Dynergy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004). Thus, the removing party bears the burden of extinguishing any doubt as to the district court's jurisdiction. *Gaus*, 908 F.2d at 566 (district courts are to reject removal jurisdiction "if there is any doubt as to the right of removal in the first instance").

Here, Qualcomm cannot escape the fact that it carriers the burden and that this burden has not been satisfied. Even assuming, *arguendo*, that Qualcomm did provide a measurable amount of evidence supporting its burden, this can hardly be enough so as to extinguish this Court's doubts as to its jurisdiction.

Accordingly, Plaintiff respectfully requests that his Motion to Remand to State court be granted.

DATED: June 16, 2008               PARISI & HAVENS LLP


By: s/David C. Parisi
Attorneys for plaintiff Merdad Valikhani, on behalf of himself, the general public and all others similarly situated

E-mail: dcparisi@parisihavens.com