1   EVAN R. CHESLER (*pro hac vice*)
    PETER T. BARBUR (*pro hac vice*)
2   ELIZABETH L. GRAYER (*pro hac vice*)
    CRAVATH, SWAINE & MOORE LLP
3   825 Eighth Avenue
    New York, NY  10019
4   Telephone:  212.474.1000
    Facsimile:  212.474.3700
5
    WILLIAM S. BOGGS (Bar No. 053013)
6   BRIAN A. FOSTER (Bar No. 110413)
    TIMOTHY S. BLACKFORD (Bar No. 190900)
7   DLA PIPER US LLP
    401 B Street, Suite 1700
8   San Diego, CA  92101-4297
    Telephone:  619.699.2700
9   Facsimile:  619.699.2701

10  Attorneys for Defendant
    QUALCOMM INCORPORATED
11

12                  UNITED STATES DISTRICT COURT

13                 SOUTHERN DISTRICT OF CALIFORNIA

14

15  MERDAD VALIKHANI, an individual, on          CASE NO.  08 cv 0786 WQH (JMA)
    behalf of himself, the general public and all
    others similarly situated,                   **QUALCOMM INCORPORATED'S REPLY**
16                                                **MEMORANDUM IN FURTHER SUPPORT**
                                                  **OF ITS MOTION TO DISMISS**
17          Plaintiff,

            v.                                    **NO ORAL ARGUMENT UNLESS**
18                                                **REQUESTED BY THE COURT**
    QUALCOMM INCORPORATED, a
19  Delaware corporation, and DOES 1-100,
                                                  Date:      August 4, 2008
20          Defendants.                           Time:      11:00 a.m.
                                                  Judge:     Hon. William Q. Hayes
21

22

23

24

25

26

27

28

DLA PIPER US LLP
  SAN DIEGO       WEST\21479670.1                              08 CV 0786 WQH (JMA)
                  336110-000167

**I.    INTRODUCTION**

As set forth in Qualcomm's opening brief ("Mem."), Plaintiff's Complaint should be dismissed because (i) he lacks standing and (ii) his Complaint fails to state a claim under the Cartwright Act and California's Unfair Competition Law ("UCL").  None of the arguments offered in Plaintiff's Opposition ("Opp.") has any merit.

*First*, Plaintiff argues incorrectly that the standing analysis set forth in *Associated General Contractors* ("*AGC*") does not apply to his claims under the Cartwright Act.  Plaintiff then misapplies the only two *AGC* factors on which Qualcomm relies—proximate causation and antitrust injury—by incorrectly analogizing his case to that of a "stereotypical" indirect purchaser who purchases a product resold by a distributor and then sues the manufacturer.  That analogy fails in light of Plaintiff's expressly-pleaded theory of causation, according to which Plaintiff's alleged injury is at least three levels removed from Qualcomm's alleged conduct:  Qualcomm is alleged to license cellular chipset manufacturers, which then sell chipsets to handset manufacturers, which then sell handsets to vendors, which finally sell to customers such as Plaintiff at prices subsidized by cell phone service providers.  Plaintiff cannot and does not cite any case in which a court has found antitrust standing based on an injury anywhere near this remote.  In addition, Plaintiff has not suffered an "antitrust injury" because Qualcomm has not sold—at any stage of the supply chain—the cell phone that Plaintiff purchased.  These defects are fatal to Plaintiff's entire Complaint.

*Second*, Plaintiff cannot state a claim for violation of the Cartwright Act based upon his theory of "involuntary conspiracy".  Plaintiff's attempt to suggest that such a theory is generally available after the Supreme Court's *Monsanto* decision is simply wrong.  In any event, even if such a claim were legally viable in theory, Plaintiff cannot and does not explain away his failure to allege the necessary facts.

*Third*, having failed to state a claim under the Cartwright Act, Plaintiff's allegations cannot support a claim under the UCL.

/////

/////

1    **II.    PLAINTIFF LACKS STANDING.**

2          **A.    As Plaintiff Concedes, the Proximate Cause and Antitrust Injury Tests Apply**

3                  **Fully to Determining Whether He Has Standing.**

4          Plaintiff does not dispute that, to survive a motion to dismiss, his Complaint must allege

5    facts establishing proximate cause and antitrust injury.  The Complaint fails to do so, and

6    Plaintiff's argument that it passes muster under some "expanded" standing analysis applicable to

7    his claim under the Cartwright Act (Opp. at 2, 8-10) is entirely without merit.

8          *First*, Qualcomm's motion to dismiss does not in any way rely on the *AGC* factors that are

9    relevant only to Sherman Act claims for damages.  Rather, Qualcomm's standing argument relies

10   on the *AGC* tests for proximate cause and antitrust injury, which are fully applicable to

11   determining whether Plaintiff has standing under the Cartwright Act.  (*See* Mem. at 9-10.)[1]

12   Indeed, Plaintiff *concedes* that these two tests are applicable to his claim.  (*E.g.*, Opp. at 2 ("A

13   Cartwright Act plaintiff must demonstrate [that] an antitrust violation was the proximate cause of

14   his injuries and antitrust injury.").)

15         *Second*, as Qualcomm explained in its opening brief, the Cartwright Act "expanded" the

16   antitrust standing requirements only insofar as it removed the absolute bar to indirect purchaser

17   claims established in *Illinois Brick*.  (Mem. at 10 & n.3.)  Thus, even when an indirect purchaser

18   brings suit under the Cartwright Act, courts can dismiss for lack of standing based upon

19   remoteness or upon the plaintiff's failure to allege an antitrust injury.  *See, e.g., Morrison v.*

20   *Viacom, Inc.*, 66 Cal. App. 4th 534, 548-49 (1998) (no Cartwright Act standing where customers

21   had "failed to allege antitrust injury").  Plaintiff's Complaint likewise should be dismissed based

22   upon these two factors.

23   /////

24   /////

25

26         [1] The law is clear that, under the Cartwright Act, proximate cause and antitrust injury remain
     critical requirements for antitrust standing.  *See Morrison v. Viacom, Inc.*, 66 Cal. App. 4th 534,
     548-49 (1998) (Cartwright Act standing requires "antitrust injury" and "that an antitrust violation
27   was the proximate cause of [plaintiff's] injuries"); *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th
28   1811, 1814-16 (1995) (applying *AGC* factors to assess standing under the Cartwright Act).

-2-

DLA PIPER US LLP
  SAN DIEGO          WEST\21479670.1                                        08 CV 0786 WQH (JMA)
                     336110-000167

1          **B.          Plaintiff's Express Theory of Causation Precludes Standing.**

2          To have antitrust standing, a plaintiff must allege an injury that is *proximately* caused by

3    an antitrust violation.  Plaintiff's *only* theory of causation is expressly pleaded as follows:

4
5          "UMTS chipset manufacturers pass [Qualcomm's] UMTS Licensing costs down to
           UMTS device manufacturers, UMTS device manufacturers pass those costs down to their
           vendors, and the vendors ultimately pass those costs on to end consumers, such as
6          Plaintiff."  (Compl. ¶ 72.)[2]

7

8    Plaintiff cannot and does not cite any case in which a court found antitrust standing based on a

9    theory of injury anywhere near this remote.  Indeed, in the only cited case in which the facts

10   resemble those alleged here—*In re Dynamic Random Access Memory (DRAM) Antitrust*

11   *Litigation*—the court properly found that consumers lacked antitrust standing because their

12   alleged injury was too remote.  516 F. Supp. 2d 1072, 1090-91 (N.D. Cal. 2007) (finding that

13   computer customers lacked standing to challenge conduct in the market for DRAM computer

14   memory because DRAM is merely one component in "all manner of personal electronic devices",

15   each of which "contains numerous other components, all of which collectively determine the final

16   price paid by plaintiffs").

17         Nor can Plaintiff save his claims by labeling himself an "indirect purchaser" and relying

18   on cases that stand for the unremarkable proposition that some such indirect purchasers may have

19   standing when they do not sue for damages under Section 4.  (Opp. at 6-7.)  In each of the

20   "indirect purchaser" cases cited by Plaintiff, the defendant sold a finished, unbundled product to a

21   single middleman, which then resold it to the plaintiff at a price that allegedly included an

22   overcharge traceable to the antitrust violation.  For instance, in the principal case relied on by

23   Plaintiff—*In re Warfarin*—pharmaceutical customers were found to have standing to sue the

24   manufacturer of their prescription drug, even though they purchased the drug through a

25   distributor.  *See In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 399 (3d Cir. 2000).  The

26         [2] Relying on facts nowhere pleaded in the Complaint, the Opposition asserts that Qualcomm
       is also a chipset manufacturer and, therefore, that there are really two instead of three
27     intermediaries in the supply chain.  (Opp. at 6.)  For the reasons discussed in Section II.B., *infra*,
       the existence of two rather than three intermediaries could in no way save Plaintiff's claims.
28

1    Third Circuit held that the drug's consumers had antitrust standing because they purchased the

2    exact drug that the defendant manufactured—albeit through middlemen—and were therefore "the

3    target of [defendant's] antitrust violations". *Id.* at 401.  The Third Circuit described this fact

4    pattern as the "stereotypical" indirect purchaser claim.  *Id.* at 399.[3]

5         Plaintiff's claim is anything but "stereotypical".  Unlike each defendant in the cases cited

6    by Plaintiff, Qualcomm does not supply—even indirectly—the product that Plaintiff purchased

7    (*i.e.*, cell phones and service).  Rather, according to the Complaint, Qualcomm licenses "some" of

8    the technology incorporated into a cellular chipset, which is then combined with other parts into a

9    cell phone and sold to a vendor.  The finished cell phone is finally purchased by the end customer

10    at a price that is subsidized in part by the service provider.  (Compl. ¶¶ 72-73.)  Thus, Plaintiff's

11    end consumer "injury" must be traced through three levels of a supply chain, disaggregated from

12    a multitude of manufacturing, licensing and component costs, and then offset by the subsidy

13    provided by cellular carriers.  This theory is too remote to support standing.

14         **C.**      **Plaintiff Has Not Suffered an Antitrust Injury.**

15         Plaintiff also cannot allege the necessary "antitrust injury" because, as an "end consumer"

16    of cell phones, he is not a consumer in any market in which an alleged antitrust violation took

17    place (*i.e.*, "markets for WCDMA technology" (Compl. ¶ 44)), or even in any market in which

18    Qualcomm sells a product.  (*See* Mem. at 12-14.)

19         Glossing over this deficiency, Plaintiff argues that the law is different for claims under the

20    Cartwright Act.  (Opp. at 3-6.)  Although California state courts have not confronted this question

21    directly, Plaintiff offers no reason why this Court should depart from the California federal

22    decisions uniformly holding that consumers who purchase in a market secondary to the market in

23    which the defendant sold a product lack standing under the Cartwright Act.  *See* Mem. at 13-14;

24

25         [3] Similarly, the Cartwright Act cases cited in the Opposition (Opp. at 7-8) are all in this "stereotypical" indirect purchaser mold.  *See In re Cipro Cases I & II*, 121 Cal. App. 4th 402, 407

26    (plaintiffs purchased drug manufactured by defendant from a distributor); *B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*, 191 Cal. App. 3d 1341, 1345-46 (1987) (plaintiff bought glass container

27    manufactured by defendant from a distributor); *Crown Oil Corp. v. Super. Ct.*, 177 Cal. App. 3d

28    604, 606 (1986) (defendant, manufacturer of coconut oil, sold coconut oil indirectly to plaintiffs).

1   *see also In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1126 (N.D. Cal. 2005)

2   ("[C]ourts interpreting the Cartwright Act's antitrust standing requirement have consistently

3   followed the 'market participant' rule."). None of the authorities cited by Plaintiff supports his

4   assertion that "California courts have refused to adopt a market participant requirement for

5   antitrust injury and have found that the Cartwright Act applies to anyone injured by the reduction

6   of competition from a Cartwright Act violation". (Opp. at 14.) Plaintiff relies principally on

7   *Cellular Plus, Inc. v. Superior Court*, 14 Cal. App. 4th 1224 (1993). But *Cellular Plus* simply

8   holds that the Cartwright Act's broader definition of antitrust injury was intended to repeal the

9   *Illinois Brick* decision. Accordingly, while *Cellular Plus* recognized the Cartwright Act's express

10  provision allowing indirect purchasers to seek damages, it by no means held that indirect

11  purchaser status is all that must be demonstrated in order to establish antitrust standing.

12      Effectively conceding that he is not a consumer in any relevant market, Plaintiff attempts

13  to fall back on a so-called "exception to the market participant requirement", under which

14  antitrust standing can exist where a plaintiff's injuries are "inextricably intertwined with the

15  injuries of market participants". (Opp. at 9.) However, "the simple invocation of [the phrase

16  'inextricably intertwined'] . . . will not allow a plaintiff to avoid the fundamental requirement for

17  antitrust standing that he or she have suffered an injury of the type—almost exclusively suffered

18  by consumers or competitors—that the antitrust laws were intended to prevent." *Steamfitters*

19  *Local Union No. 420 Welfar Fund v. Philip Morris, Inc.*, 171 F.3d 912, 926 n. 8 (3d Cir. 1999).

20  The narrow exception referenced by Plaintiff applies only when a person can be considered the

21  "direct victim" of a conspiracy or the "necessary means" by which the conspiracy was carried

22  out. *Ostrofe v. H.S. Crocker Co., Inc.*, 740 F.2d 739, 744-47 (9th Cir. 1984) (*citing Blue Shield v.*

23  *McCready*, 457 U.S. 465, 479, 483-84 (1982)).[4] Here, Plaintiff does not and cannot allege that he

24

25      [4] The classic example was the plaintiff in *McCready*, a patient who sued her healthcare
provider after it refused to reimburse her as part of its conspiracy to boycott certain psychologists.
26  Although it was the plaintiff's employer, and not her, who was a consumer in the market for
health plans, the plaintiff's injury was considered "inextricably intertwined" with the conspiracy
27  because it could not have been carried out without injuring her; she was thus a "necessary step in
effecting the ends of the alleged illegal conspiracy". 457 U.S. at 483-84.

28

1   was a "direct victim" or the "necessary means" of Qualcomm's alleged conduct.  To the contrary,

2   he expressly alleges that *others*—"UMTS chipset and UMTS device manufacturers"—are the

3   ones that "suffer *direct* anticompetitive harm".  (Compl. ¶ 72 (emphasis added).)  Because

4   Plaintiff was not injured in the same market as the alleged anticompetitive conduct, his alleged

5   injury is not an *antitrust* injury.

6           **D.      Plaintiff Lacks Standing Under the UCL.**

7           For the same reasons that Plaintiff lacks antitrust standing, he also lacks standing to

8   prosecute a claim under California's UCL.  Again, Plaintiff ignores the unique remoteness of his

9   claim and instead simply relies on cases from the UCL context upholding claims that fit the

10  "stereotypical" indirect purchaser mold.  *See In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d

11  1098, 1102-05 (N.D. Cal. 2007) (consumers purchased defendant's pharmaceutical through a

12  middleman); *Shersher v. Super. Ct.*, 154 Cal. App. 4th 1491, 1500 (2007) (consumers purchased

13  Microsoft computer equipment through a retailer).  Even those cases acknowledge that, for UCL

14  standing, "a showing of causation is *required* as to each representative plaintiff".  *Ditropan*, 529

15  F. Supp. 2d at 1105-06.  Indeed, in the UCL context, Plaintiff's "'injury in fact' must be fairly

16  traceable to the challenged conduct of the defendant, and it must be likely, as opposed to merely

17  speculative, that the injury will be redressed by a favorable decision".  *Stickrath v. Globalstar,*

18  *Inc.*, 527 F. Supp. 2d 992, 995 (N.D. Cal. 2007).  For all the reasons that Plaintiff's theory of

19  causation is too remote to support antitrust standing, it also is insufficient under the UCL.

20  **III.    THE COMPLAINT FAILS TO STATE A CLAIM.**

21          **A.      Plaintiff Does Not Allege an Actionable Conspiracy.**

22          Plaintiff makes three arguments for why his claim based on an "involuntary conspiracy"

23  should survive notwithstanding *Monsanto Co.  v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1984).

24  None of them has any merit.

25          *First*, Plaintiff argues that *Monsanto* cannot foreclose his claim under the Cartwright Act.

26  To the contrary, the Cartwright Act is expressly modeled on the Sherman Act and therefore

27  "decisions under the latter are applicable to the former".  *G.H.I.I. v. MTS, Inc*., 147 Cal. App 3d

28  /////

DLA PIPER US LLP
   SAN DIEGO

WEST\21479670.1
336110-000167

-6-

08 CV 0786 WQH (JMA)

1    256, 265 (1983). For this reason, Plaintiff is unable to cite any California case after *Monsanto*

2    upholding a Cartwright Act claim based on his theory of involuntary conspiracy. (Opp. at 13-16.)

3          *Second*, each of the post-*Monsanto* federal decisions that Plaintiff claims support his

4    theory (Opp. at 14-15) is inapposite. One of the cases actually undercuts Plaintiff's theory. *See*

5    *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992) (finding no coerced

6    conspiracy despite threats). Plaintiff's other Ninth Circuit cases involve tying arrangements,[5]

7    which are recognized as a narrow exception to *Monsanto*. *See Nat'l Assoc. of Freelance*

8    *Photographers v. Assoc. Press*, No. 97-CV-2267, 1997 WL 759456, at *9 (S.D.N.Y. Dec. 10,

9    1997) (recognizing "the narrow exception whereby franchisees alleging an illegal 'tying'

10   arrangement can satisfy the joint action requirement by charging a 'conspiracy'—really

11   'unwilling compliance'—between themselves and a franchisor"); *see also Toscano v. PGA Tour,*

12   *Inc.*, 70 F. Supp. 2d 1109, 1115 n.6 (E.D. Cal. 1999) (explaining that, because tie-ins are per se

13   illegal, courts "'err on the side of over-inclusiveness in determining the presence of an

14   agreement'" (citing 7 Areeda & Hovenkamp, *Antitrust Law* ¶ 1437)).

15         *Third*, recognizing the defects in his Complaint, Plaintiff asks the Court to ignore the lack

16   of "factual detail about the coercive tactics Qualcomm used", arguing that these tactics are

17   "irrelevant". (Opp. at 15.) They are in fact highly relevant. After *Twombly*, references to

18   "specific time, place or person" are critical in providing notice to antitrust defendants before

19   "allowing a potentially massive factual controversy to proceed". (Mem. at 7-8, 18-19.) Thus,

20   even when entertaining a "coerced" conspiracy claim, courts require the plaintiff to plead "facts

21   regarding the alleged compulsion and coercion—for example, *who* coerced *whom*, *when* the

22   coercion took place, *how* the coercion was effected, and *what* comprised the conspiracy". *Int'l*

23   *Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. 07-CV-00043, 2007 WL 4976364, at *9-10

24   /////

25

26         [5] *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 917 (9th Cir. 2008); *Datagate,*
     *Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1426-27 (9th Cir. 1995) (explaining that Section 1's
27   concerted action requirement "is satisfied in tie-in cases by the coerced sales contract for the tied
     item").
28

1  (C.D. Cal. Oct. 29, 2007) (emphasis in original).  Because Plaintiff fails to allege these facts, he

2  cannot state a claim under the Cartwright Act.

3      **B.    Plaintiff Cannot State a UCL Claim.**

4      Having failed to state a claim for violation of the antitrust laws, Plaintiff's UCL cause of

5  action—which is based on identical allegations—cannot survive.

6      *First*, Plaintiff cannot rescue his "unlawful" claim by reference to the Third Circuit's

7  decision in *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007).  Although

8  Plaintiff has copied much of Broadcom's 2005 complaint, he critically has alleged a *different*

9  antitrust market.  Broadcom's complaint defined the relevant market as "the market for

10 Qualcomm's proprietary WCDMA technology", *id.* at 315, but Plaintiff defines the relevant

11 market as cellular "devices" and "service" (Compl. ¶¶ 70-86).  Because, for all the reasons

12 discussed above, Plaintiff's allegations in this case fail to state an antitrust claim, they also fail to

13 state an "unlawful" UCL claim.  *See Webcaster Alliance, Inc. v. Recording Indus. Assoc. of Am.,*

14 *Inc.*, No. 03-CV-3948, 2004 WL 1465722, at *6 (N.D. Cal. April 1, 2004) (dismissing "unlawful"

15 claim based upon allegations that were insufficient to state an antitrust cause of action).

16     *Second*, without an underlying antitrust violation, Plaintiff's claim under the "unfair"

17 prong fails for the same reason and finds no support in the *Cel-Tech* decision.  *Cel-Tech*

18 *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 n.12 (1999).  The law in California

19 is clear that, "[i]f the same conduct is alleged to be both an antitrust violation and an 'unfair'

20 business act or practice for the same reason—because it unreasonably restrains competition and

21 harms consumers—the determination that the conduct is not an unreasonable restraint of trade

22 necessarily implies that the conduct is not 'unfair' toward consumers".  *Chavez v. Whirlpool*

23 *Corp.*, 93 Cal. App. 4th 363, 375 (2001).  Without a basis for his antitrust claims, Plaintiff cannot

24 state a UCL claim based on the same allegations.  *See SC Mfr. Homes, Inc. v. Liebert*, 162 Cal.

25 App. 4th 68, 93 (2008) ("In that plaintiff cannot allege a Cartwright Act violation . . ., the cause

26 of action for a violation of the UCL also cannot stand.").

27     *Third*, Plaintiff is unable to cite any case supporting his theory based on the "fraudulent"

28 prong, which requires the deception of customers as opposed to the sophisticated SSOs that

DLA PIPER US LLP
SAN DIEGO

-8-

WEST\21479670.1
336110-000167

08 CV 0786 WQH (JMA)

1  allegedly were deceived here.  (Mem. at 19-20.)  Nor does he even attempt to distinguish

2  Qualcomm's cases, which hold squarely that "sophisticated" entities like standards organizations

3  receive no protection under the UCL.  (Mem. at 19.)  In the one case cited by Plaintiff, it was the

4  investing "public" that allegedly had been deceived. *Overstock.com, Inc. v. Gradient Analytics,*

5  *Inc.*, 151 Cal. App. 4th 688, 696 (2007).

6  **IV.    CONCLUSION**

7       For all the foregoing reasons and the reasons set forth in Qualcomm's opening brief,

8  Qualcomm's motion to dismiss should be granted.

9

10  Dated:  July 28, 2008                    DLA PIPER US LLP

11                                           By /s/ William S. Boggs

12                                              william.boggs@dlapiper.com

13                                           CRAVATH, SWAINE & MOORE LLP
                                             Evan R. Chesler
14                                           Peter T. Barbur
                                             Elizabeth L. Grayer
15
                                             Attorneys for Defendant
16                                           QUALCOMM INCORPORATED

17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

WEST\21479670.1
336110-000167

-9-

08 CV 0786 WQH (JMA)