# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERDAD VALIKHANI, an individual, on behalf of himself, the general public and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br>QUALCOMM INCORPORATED, a Delaware corporation, and DOES 1-100,<br><br>Defendants. | CASE NO. 08CV786 WQH (JMA)<br><br>ORDER |

HAYES, Judge:

The matter before the Court is Plaintiff's motion to remand this case back to the California State Superior Court in San Diego, California. (Doc. # 20). The Court finds this matter suitable for submission on the papers and without oral argument.

## PROCEDURAL HISTORY

On April 18, 2008, Plaintiff Merdad Valikhani filed the pending class action lawsuit against Defendant Qualcomm Incorporated (Qualcomm) in the California State Superior Court in San Diego, California. (Doc. # 1 at Ex. A). On April 30, 2008, Defendant Qualcomm removed the case to this Court pursuant to 28 U.S.C. §§ 1332(d) & 1441. (Doc. # 1). On May 16, 2008, Plaintiff filed the pending motion to remand this case back to the California State Superior Court. (Doc. # 20). On June 9, 2008, Defendant filed an opposition to the motion. (Doc. # 25). On June 16, 2008, Plaintiff filed a reply to support the motion. (Doc. # 28).

## ALLEGATIONS OF THE COMPLAINT AND FACTUAL BACKGROUND

Plaintiff Merdad Valikhani resides in Los Angeles, California. *Complaint* (Doc. # 1 at Ex. A), ¶ 8. Plaintiff purchased a subsidized LF-CU500 cell phone from AT&T and receives cellular phone service from AT&T. *Compl.*, ¶ 8.

Defendant Qualcomm is a Delaware corporation which is headquartered in San Diego, California. *Compl.*, ¶ 9. "Qualcomm commercializes technology involved in cellular communications and applications," and owns patents which are significant in the wireless communications industry. *Compl.*, ¶ 9. Qualcomm generates billions in revenues by licensing its patents. *Compl.*, ¶ 9.

The wireless communications industry consists of many components, including wireless carriers who provide cell phone service to consumers, cell phone manufacturers who manufacture cell phones, and cell phone component manufactures who manufacture parts of cell phones. *Compl.*, ¶¶ 16-17. In order "[f]or a carrier's wireless system to function properly, all of the system's components (e.g. base stations in various geographic locations and consumers' cell phones) must seamlessly interface with each other." *Compl.*, ¶ 19. This requires that "each cell phone," no matter who manufactures it, "must be capable of interfacing with all of the other components in a carrier's wireless system." *Compl.*, ¶ 19.

Because of the "demand for interoperability," telecommunication standards determining organizations (SDOs) have created industry and global-wide standards for wireless carriers, cell phone manufacturers, and component makers. *Compl.*, ¶¶ 20-22. When telecommunication SDOs consider implementing new standards, "[t]he ownership of relevant intellectual property (IP) and related IP licensing practices are critical issues . . . ." *Compl.*, ¶ 24. "If the implementation of a standard requires the use of particular [intellectual property], such as a patent, the [intellectual property] owner may have the ability to prevent, delay or distort the development of technology implementing that standard (sometimes referred to as 'patent hold-up') and thereby undermine the purpose of the SDO." *Compl.*, ¶ 24. "Accordingly, SDOs typically require that their members declare whether they believe they hold patents necessary for compliance with a particular standard, and if so whether they are

1  willing to license such patents on fair, reasonable, and non-discriminatory (FRAND) terms."
2  *Compl.*, ¶ 24.
3       "Patents necessary to implement a particular standard are known as 'essential patents'
4  for the standard to which they relate," and "[e]ach SDO relevant to this action requires that
5  owners of essential patents agree to FRAND licensing before the SDO will agree to include
6  the technology that depends upon those patents in any industry standard." *Compl.*, ¶¶ 24, 43.
7  Once adopted, "[a]n industry-wide standard necessarily eliminates previously available
8  alternative technologies, which can no longer be used and are no longer competitive." *Compl.*,
9  ¶ 34. "The adoption of an industry-wide standard, therefore, confers monopoly power on the
10 holders of patents essential to implementing that standard." *Compl.*, ¶ 34.
11      Relevant wireless communication SDOs adopted the Universal Mobile
12 Telecommunications System (UMTS) standard for the wireless communication industry, and
13 Defendant Qualcomm holds "essential" patents with respect to the UMTS standard. *Compl.*,
14 ¶¶ 1-4, 33-38. Specifically, "Qualcomm's WCDMA patents are essential to the manufacture
15 of UMTS-compliant cell phones and other UMTS-compliant devices, and are also essential
16 for the implementation of the UMTS standard." *Compl.*, ¶ 38. Before the relevant SDOs
17 included Qualcomm's technology and intellectual property in the UMTS standard, "Qualcomm
18 made repeated and express written representations to SDOs . . . that Qualcomm would license
19 any of its essential WCDMA patents on FRAND terms prior to the adoption of the UMTS
20 standard." *Compl.*, ¶¶ 44-45.
21      After the relevant SDOs adopted the UMTS standard, Defendant Qualcomm did not
22 license its UMTS-related patents in a fair, reasonable, and non-discriminatory manner.
23 *Compl.*, ¶ 48. Rather, Qualcomm has charged "supracompetitive" prices for goods and
24 licenses which do not bear a relationship to its patents. *Compl.*, ¶¶ 47-88. Qualcomm never
25 intended to offer its patent portfolio on FRAND terms, and only represented that it would
26 license on FRAND terms to induce the relevant SDOs to include Qualcomm's technology in
27 the UMTS standard. *Compl.*, ¶¶ 44-48. On behalf of himself and others similarly situated,
28 Plaintiff Valikhani alleges that "Qualcomm acquired monopoly power by intentionally

misrepresenting to the relevant SDOs and their members that Qualcomm would license its WCDMA patents on fair, reasonable, and non-discriminatory terms." *Compl.*, ¶ 101. Plaintiff Valikhani alleges that he and others similarly situated were forced to pay "supracompetitive" prices for goods in the wireless communications marketplace as a result of Defendants' improper actions. *Compl.*, ¶ 109.

Plaintiff seeks certification of, and purports to represent, two different classes of persons in this lawsuit. *Compl.*, ¶ 1. First, Plaintiff alleges and represents a "Device Class," defined as all persons who purchased a UMTS-capable cellular device. *Compl.*, ¶¶ 1, 89. Over 14 million UMTS devices, each requiring a patent license from Defendant, have been sold in the United States from 2005 through 2007. *Declaration of Andres Leyva (Doc. # 25-1)*, ¶ 3. Qualcomm estimates that "326 million UMTS devices were sold globally in the last three years." *Compl.*, ¶ 90. According to the Complaint, "[t]he Device Class seeks injunctive relief under state anti-trust laws, and money damages (including treble damages under the Cartwright Act) . . . for persons who purchased a UMTS-capable cellular device." *Compl.*, ¶ 7. Second, Plaintiff alleges and represents a "Service Class," defined as all persons who purchased cellular service from any carrier in the United States which bundles its cellular service with subsidized UMTS-compliant devices." *Compl.*, ¶ 93. The Service Class seeks "injunctive relief under state antitrust laws, and money damages (including treble damages under the Cartwright Act) for persons who purchased cellular service from a carrier that bundled its cellular services with subsidized UMTS-capable devices." *Compl.*, ¶ 87. The Complaint seeks reasonable attorneys' fees and restitution, among other relief. *Compl.*, ¶ 115.

Plaintiff alleges that "Defendant's actions have injured Plaintiff and the Device and Service Class members and threaten them with additional antitrust injury in the form of more expensive UMTS cellular devices, reduced selection, and lessened non-price competition." *Compl.*, ¶ 105. Plaintiff and the Class Members allege that they have sustained antitrust injuries from the Defendant's actions including artificially and unreasonably increased costs for UMTS cellular devices. *Compl.*, ¶ 105.

## STANDARD OF REVIEW

28 U.S.C. § 1332(d)[1] "vests the district court with 'original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which' the parties satisfy, among other requirements, minimal diversity." *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 680 (9th Cir. 2006). The burden of establishing removal jurisdiction under 28 U.S.C. § 1332(d) is on "the proponent of federal jurisdiction." *Id.* at 685.

## DISCUSSION

Defendant removed this case under 28 U.S.C. § 1332(d) of the Class Action Fairness Act. The only issue before the Court is whether Defendant has established that more than $5,000,000 is in controversy in this case, as is required under 28 U.S.C. § 1332(d)(2).

Plaintiff contends that this case should be remanded because Defendant has not satisfied its burden to establish that more than $5,000,000 is at issue in this case. *See* 28 U.S.C. § 1332(d)(2). Plaintiff notes that there is a presumption against removal jurisdiction, and contends that Defendant has not submitted sufficient evidence to establish the requisite amount in controversy.

Defendant contends that Plaintiff's Complaint satisfies the amount in controversy without reference to any evidence submitted by Defendant. Specifically, Defendant contends that the allegations of the Complaint make it facially apparent that more than $5,000,000 is in controversy here, particularly considering the size of the alleged Service and Device classes and the fact that Plaintiffs seek treble damages, injunctive relief, and attorney fees. Defendant further contends that it has submitted evidence which adequately establishes that more than $5,000,000 is at issue in this case.

In order to establish jurisdiction under 28 U.S.C. § 1332(d), a party must establish by a preponderance of the evidence that plaintiff class members seek, in aggregate, more than $5,000,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). In other words, if the proponent of jurisdiction establishes that it is "more likely than not" that plaintiff

---

[1] 28 U.S.C. § 1332(d) is part of the Class Action Fairness Act of 2005 (CAFA).

1  class members seek more than $5,000,000, then the proponent has satisfied its burden with
2  respect to the amount in controversy. *Abrego*, 443 F.3d at 689. In determining "the amount
3  in controversy on removal, . . . [t]he district may consider whether it is 'facially apparent' from
4  the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mutual*
5  *Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). If the jurisdictional amount is not "facially
6  apparent, . . . the court may consider facts in the removal petition, and may 'require parties to
7  submit summary-judgment-type evidence relevant to the amount in controversy at the time of
8  removal." *Id.* (citing *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995).

9  The Complaint alleges that the Service Class consists of at least 76 million persons.
10 *Compl.*, ¶ 94. Defendant has submitted evidence that the over 14 million UMTS devices have
11 been sold in the United States from 2005 to 2007. *Leyva Decl.*, ¶ 3. Plaintiff seeks
12 compensatory damages, treble damages[2] and an injunction enjoining Defendant from
13 continuing to license its patents unfairly. Defendant has submitted evidence that its UMTS
14 licensees earned over $2.5 billion on the sale of UMTS-licensed devices in the United States,
15 *Leyva Decl.*, ¶ 4; and that Defendant's "Technology Licensing Segment" had total revenues
16 of $2.77 billion, at least $1 billion of which is derived from UMTS sales worldwide. *Karl*
17 *Huth Declaration*, Ex. D at 4. The allegations of the Complaint and Defendant's evidence
18 establish that more likely than not Defendant's patent licensing division has earned billions of
19 dollars over the last three years, a large part of which is attributable to Defendant's essential
20 UMTS patents. *Huth Decl.*, Ex. D.

21 After considering the allegations of the Complaint and the evidence submitted by
22 Defendant, the Court concludes that Defendant has established that it is more likely than not
23 that Plaintiff class members seek greater than $5,000,000 in this case. The Court concludes
24 the allegations of the size of both the Service and the Device Classes; Plaintiff's request for
25 not only compensatory damages, but treble damages, injunctive relief, and attorney fees; and

---

[2] In determining the amount in controversy, a court can consider requests for treble damages, attorneys fees, and injunctions. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (attorneys fees); *In re Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001) (injunctive relief); *Chabner v. United of Omaha Life Ins.*, 225 F.3d 1042, 1046 fn. 3 (9th Cir. 2000) (treble damages).

1  and Defendant's evidence related to the size of the Service and Device Classes and
2  Defendant's revenues establishes by a preponderance of the evidence that the amount in
3  controversy is satisfied.  Plaintiff seeks damages for a class of approximately 76 million
4  members and injunctive relief related to Defendant's multibillion dollar patent licensing
5  business.  Defendant has submitted evidence to show that Plaintiff's requested injunction to
6  enjoin all "further anticompetitive acts" by Defendant would more likely than not be valued
7  in excess of $5,000,000. Finally, and in addition to the costs of the injunction, the Court
8  concludes that Plaintiff's claims for restitution, treble damages, and attorney fees make it more
9  likely than not that more than $5,000,000 is in controversy in this case.
10        IT IS HEREBY ORDERED that Plaintiff's motion to remand (Doc. # 20) is DENIED.
11 DATED:  August 21, 2008

                                  _____
                                   **WILLIAM Q. HAYES**
                                   United States District Judge